UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTT A. WININGEAR, | ) | Case No. |
| Plaintiff, | ) | 1:13-cv-1823 RLY-DML |
| | ) | |
| vs. | ) | COMPLAINT FOR DAMAGES FOR VIOLATION OF CONSTITUTIONAL AND CIVIL RIGHTS [42 U.S.C. § 1983] FALSE ARREST AND IMPRISONMENT; CONSPRIACY; NEGLIGENCE, MALICIOUS PROSECUTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BATTERY |
| THE CITY OF MUNCIE INDIANA, MUNCIE CHIEF OF POLICE, JEFFERY PEASE, Individually and in his capacity as a Muncie Police Officer, MATTHEW BERGER, Individually and in his capacity as a Muncie Police Officer, and DOES 1 Through 10 inclusive, | ) | |
| | ) | JURY TRIAL DEMAND |
| Defendants. | ) | |

Plaintiff, Scott A. Winingear, by counsel, and upon information and belief alleges as follows:

JURISDICTION AND VENUE

1. This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983, and the Indiana Constitution Article I Section 11, in that the action is commenced to recover damages against Defendants, and each of them, for violation of Plaintiff's right to due process of law, equal protection, and the right to be free from false arrest and imprisonment under the aforementioned Amendments to the United States and Indiana Constitution, all as more fully appears below.

2. This court has jurisdiction over Plaintiff's claim for relief for violation of the Plaintiff's Constitutional and civil rights pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state law claims alleged below. This Court has original subject matter jurisdiction of the federal questions presented pursuant to 28 U.S.C. § 1333 and § 1343.

1

3. Venue is proper in the Indianapolis Division because the Defendants reside in this division and the preponderance of the evidence complained of occurred in this division.

4. At all times material in this complaint, Plaintiff is a citizen of the United States residing in the Southern District of Indiana, and a resident Anderson, Indiana, in the County of Madison Indiana.

5. At all times material in this complaint, Defendant, The City of Muncie Indiana was, and is a City and political subdivision of the State of Indiana and a municipality organized and existing under the laws of the State of Indiana.

6. At all material times in this complaint, Police Officer Jeffery Pease ("Pease") and Police Officer Matthew Berger ("Berger") were, and are police officers employed by the City of Muncie and, in doing the actions herein alleged were acting within the course and scope of such employment. Plaintiff is informed and believes and thereon alleges that Officers Pease and Berger were, and are residents of the Southern District of Indiana and that the incident, events or occurrences referred to in this complaint occurred in the City of Muncie, Delaware County, in the Southern District of Indiana.

7. Plaintiff is ignorant of the true names and capacities of the Defendants identified as Does 1 through 10, inclusive, and for that reason have sued such Defendants by such fictitious names. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of said Doe Defendants when the same has been ascertained.

BACKGROUND ALLEGATIONS

8. Plaintiff, for a number of years has operated 'Mattress USA" a retail mattress store located in the Southway Plaza Shopping Center (Southway Plaza) at 3845 South Madison Street in Muncie, Indiana ("Muncie") (See Exhibit "A").

9. On or about December 8, 2012, Plaintiff's began his day like all other days when arriving at his mattress store around 8AM to prepare to open for business.

10. On or about the morning of December 8, 2012, sometime around 10:30 – 11:00 AM, Plaintiff was inflating and affixing a large balloon to the bumper of store's delivery pick-up truck parked in the parking lot front of his store advertising a mattress sale.

11. While outside the store, Plaintiff sees a black SUV speeding past his store -- Plaintiff yells out: "Slow the Fuck Down".

12. The driver of the SUV jams his brakes backs up and confronts the Plaintiff where an argument ensues.

13. Plaintiff recognizes the driver as retired Muncie police officer Gary McCreery along with his wife Judith, the only passenger.

14. Plaintiff had dated Gary's McCrery's niece Cindy McCreery while in high school during the late 1980's.

15. Plaintiff has been to Gary and Judy McCreery's home on two prior occasions.

16. On one occasion Plaintiff was invited by Gary McCreery's brother Frank to attend a wedding anniversary party for Gary and Judy.

17. On another more appalling occasion, Plaintiff was asked by Gary's McCreery's sister-in-law Susan McCreery, to accompany her to Gary's home where she confronted Gary McCreery about his sexual indiscretions with her daughters. Judy McCreery went into the kitchen to wash dishes during this confrontation.[1]

18. Plaintiff has not seen any of the McCreery's for over the past 20 years, not until sometime in October of 2012 when Plaintiff sold a mattress to Cindy McCreery.

---

[1] Gary and Judy McCreery testified during their pre-trial depositions they never met the Plaintiff.

3

19. Thereafter, Plaintiff began to see a black SUV drive past his mattress store on occasion, often slowing down in front of the store. Plaintiff could not see who the driver was.

20. Plaintiff's mother, Arlene Winingear has also seen a black SUV drive slowly past the store as well.

21. When this quarrel begins, Plaintiff tells McCreery his concerns for the safety of his customers and for the patients who frequent the IU Health Clinic located a couple of doors down from his mattress store.

22. Plaintiff tells McCreery he was going to call the police. Plaintiff is holding the store's cordless phone in his hand.

23. McCreery tells the Plaintiff "he's a cop"[2], reaches down and then places a handgun on the dashboard.[3] Plaintiff tells McCreery he doesn't care if he is the "fucking Pope" while keeping his eye on the handgun.

24. As events are unfolding, Dave Johnson ("Johnson") is walking through the Southway Plaza parking lot, passing the mattress store, on his way to the bus stop located at the parking lot's north entrance on South Madison Street to catch the bus.

25. Johnson has to get out of the way of the speeding SUV to avoid being struck.

26. Johnson watches the SUV turn north at the building's south corner.

27. Johnson who has not yet turned the corner, hears someone yell out, but could not make out what it was. When Johnson does turns the corner he has an unobstructed view of the parking lot and the events which follow.

---

[2] Gary McCreery is heard on the 911 call telling someone, other than the Plaintiff, that he is a policeman. See IC-35-45-1 "Impersonating a Law Enforcement Officer" a Class D Felony.
[3] McCreery owns a Smith & Wesson 9mm handgun and holds a conceal carry permit.

4

28. Johnson testified: *"I seen the SUV throw it in reverse and came flying backwards... I was in shock... I never seen [nobody] drive like that...it looked like an older person too."*

29. The SUV pulls alongside the Plaintiff who is standing in the parking lot about 20 feet away from front of the store's entrance.

30. Johnson is on the sidewalk in front of the mattress store witnessing the incident.

31. An argument ensues with Gary McCreery asking the Plaintiff 'what's his problem' and with Plaintiff being argumentative about his speeding through the parking lot.

32. Johnson hears: "I'm a cop," and "I'm going to call the cops."

33. During the argument Johnson sees the Plaintiff holding a cordless phone. Johnson believed the Plaintiff was calling the police.

34. During the argument, Johnson see's McCreery bend over to get something off the floor, and when he comes up he sees McCreery's hand on the dashboard.

35. Johnson standing approximately 20 feet away cannot make out what the object was that McCreery appears to have placed on the dash.

36. After the argument ends, McCreery drives off and Plaintiff returns to his store. Johnson continues to the bus stop to wait for the 11:30 bus to arrive.[4] While waiting, he continues to have an unobstructed view of the Southway Plaza parking lot.

37. At approximately 11:15AM, Johnson says he sees two or three police cars pull up in front of the mattress store.

38. Johnson then sees Plaintiff in custody and placed into a police car.

---

[4] On Saturday MITS buses run on the hour until noon and then changes to the half-hour.

39. At the time Johnson witnesses the argument, from sometime between 10:30 and 11:00 AM, until the time he boards the 11:30AM bus, Johnson, does not see Plaintiff's red convertible Mini Cooper move from its parked location in the front of the mattress store.

40. Defense witness Ashley Gulley, cashier at the Dollar General Store at Southway Plaza, had an unobstructed view of the parking lot that morning, testified the Plaintiff parked his car in the same space as he did every day, came into the Dollar General around 8AM, bought a newspaper and candy; and, hadn't seen the red Mini Cooper move that morning. Gulley and two co-workers witnessed Plaintiff's arrest.

*The State's Version of Events*

41. The State of Indiana charged the Plaintiff with a violation of IC 35-45-1-1 Intimidation with a Deadly Weapon, a Class C Felony (See Exhibit "B").

42. The State's entire case rests solely on the allegations of Gary and Judy McCreery. The State has not produced a knife in this case.

43. Complaining witnesses Gary and Judy McCreery allege that on or about December 8, 2012, at approximately 11AM, they were driving home on South Madison Street passing the Southway Plaza shopping center when a red Mini Cooper convertible pulls in front of their SUV, slows down to about 10 miles per hour, and then turns west into Southway Plaza's parking lot's south entrance.

44. The McCreery's testified that they did not know who the owner of the red Mini Cooper convertible was or recognize the driver.[5]

---

[5] McCreery testified in his pre-trial deposition that he spoke with police about "several calls of this description of the car" with McCreery quoting the police saying: "they had had problems with a little red vehicle". Plaintiff believes this information provides McCreery the basis which he manufactures this story.

6

45. Gary McCreery testified when the Mini Cooper turned into the parking lot the driver gave him the finger. Judy McCreery did not witness this gesture.

46. Gary McCreery testified he stopped his Buick Enclave (SUV) and backed up to confront the Plaintiff.[6]

47. Gary McCreery testified he lowered the passenger side window [7] and yells to the Plaintiff *"what's your problem pal?"*

48. Gary McCreery testified the Plaintiff opens the driver's door, and while still remaining inside the vehicle [8] and with his *'right hand'* [9] waives a foot long hunting knife above his car door and yells: *"I'll kill your mother fucking ass"*.

49. Gary McCreery responds: *"Not today pal." I'm a retired policeman, and if you think that knife scares me, it does not scare me."*

50. Gary McCreery testified the Plaintiff closes the car door and pulls the Mini Cooper alongside the SUV with the Mini Cooper facing north and the SUV facing south. The vehicles are approximately 4 feet apart.

51. Gary McCreery testified that the Plaintiff gets out of his car, stands up and raises the knife above the car door and says to McCreery: *"I'll kill your retired policeman's ass"* and McCreery responds: *"not today."* [10]

---

[6] Gary McCreery testified at trial that when the confrontation took place with the Plaintiff, he backed his SUV into the parking lot at the south entrance to Southway Plaza; however, in his pre-trial deposition McCreery testified he backed up and parked on the shoulder on S. Madison Street just to the north of the south entrance. After the confrontation ended, McCreery then pulled into the parking lot.
[7] Judith McCreery testified in her pre-trial deposition that her husband was yelling out of the driver's side window which was rolled down just a "little bit". Gary McCreery testified that he lowered the passenger window down to about ¼ of an inch from bottom. McCreery further testified that he would not have opened his window as Plaintiff was on the passenger side of the vehicle.
[8] Judith McCreery testified in her pre-trial deposition that Plaintiff got completely out of his car and when doing so knocked his hat off his head.
[9] Judith McCreery testified in her pre-trial deposition that Plaintiff held the knife in his "left" hand
[10] Judith McCreery testified in her pre-trial deposition that when Winingear was standing outside her husband's door, with knife raised in the air threatening to kill Gary McCreery she testified: "I don't see him" "Gary will have to tell you what all happened" "I mean, I don't know". Meanwhile, as these events are allegedly occurring,

7

52. Gary McCreery testified that Plaintiff got back into his car, drives to the north entrance at Southway Plaza, turns around, and proceeds south on South Madison Street to the intersection of South Madison and South Walnut Streets.

53. Gary McCreery testified that the Plaintiff then turns north onto South Walnut Street at which point McCreery decides to gives chase to the Plaintiff believing he is still a police officer.

54. While McCreery is chasing the Plaintiff 'at high rate of speed', and unable to overtake the 2-cylinder Mini Cooper with his V-8 powered Buick Enclave, McCreery calls Muncie Police at 11:03 AM and reports: a "white male, driving a red convertible Mini Cooper (or small Chrysler), with partial license plate number, who just cut him off, pulled a knife." McCreery gives the 911 operator his name, cell phone number, and the fact that he is a retired police officer and is giving chase but losses sight of the Plaintiff, while exceeding the speed limit through a residential and commercial area of town.

55. At approximately two and one-half minutes into the 911 call, McCreery reports he lost sight of the Mini-Cooper at 23rd and South Walnut Streets. McCreery is heard saying is he at 23rd and South Walnut Streets. The operator asks McCreery if he wants to speak to police.

56. McCreery says he sees a police car drive by.

57. The 911 operator contacts police Officer Doug Narramore who is then proceeding southbound on South Walnut Street in route to Southway Plaza.

58. While passing 23rd and Walnut Streets, the 911 operator calls over the radio that the complainant is at 23rd and Walnut.

---

McCreery cell phone records show Judith McCreery making a two minute cell phone call to her sister in Nashville, TN.

8

59. Gary McCreery is heard saying to the 911 operator a police officer was behind him.

60. The 911 call terminates.

61. Police Officer Narramore testified in his pre-trial deposition: that after receiving a call from dispatch about a suspect causing trouble at Southway Plaza, he was in route to Southway Plaza on South Walnut and was directed to 23rd and South Walnut to make contact with the McCreery's. Narramore however, *did not* make contact with the McCreery's at 23rd and Walnut and was unable to locate them there.

62. Officer Narramore testified that the first time he made contact with Gary McCreery that day was in the parking lot at Southway Plaza.

63. Police Officer Narramore testified in his pre-trial deposition that after arriving at 23rd and Walnut, and not finding the McCreery's at that location, he was directed by Officer Pease, over the radio, to go to the mattress store where they had already made contact with the Plaintiff.

64. Upon information and belief, McCreery never left Southway Plaza. In the time from when the argument in front of the store took place, until the time the call was made to police, McCreery had a half-hour to fabricate a story to avert attention from his own crime of impersonating a law enforcement officer and intimidation with a deadly weapon. McCreery manufactured this story to effectuate the Plaintiff's arrest and prosecution; and, to retaliate against the Plaintiff's for his acquiring knowledge about his prior transgressions.

65. Gary McCreery has known Scott Winingear for over 20 years, despite his attestations to contrary, and knows his background.

66. It appears Gary McCreery may have been stalking the Plaintiff since his niece purchased a mattress from Scott Winingear. Plaintiff came back to the Muncie area after a long hiatus, perhaps resurrecting old demons, or by happenstance, McCreery and Winingear clash on the morning of December 8.

*The Arrest*

67. On or about December 8, 2012, in the City of Muncie, County of Delaware, State of Indiana, at approximately 11:04AM, Muncie Police Officers Pease, Berger, Narramore, Robbins and Dillard, were dispatched by the Delaware County 911 Operator to investigate a report of a "suspect causing trouble at Southway Plaza".

68. Police Officer Pease, the first to arrive at Southway Plaza, locates the red convertible Mini Cooper parked in front of the mattress store.

69. Officer Pease ascertained the owner to be Scott Winingear.

70. Officer Pease knows that Plaintiff operates "Mattress USA" at the Southway Plaza shopping center.

71. Officer Pease upon locating the red Mini Cooper does not conduct a cursory investigation to determine if the Mini Cooper had been driven within the past few minutes, especially in light of the fact that Officer Pease had been provided information from dispatch about a red Mini Cooper involved in an act of "road rage" -- as reported by retired police officer Gary McCreery just minutes before.

72. Officer Pease apparently elected to ignored Muncie Police Department General Order 2-14 {Conducting Preliminary Investigations}, where said Order requires the first officer on the scene to render aid, preserve evidence, preserve the crime scene (if any), interview and question victims, witnesses or suspects, and *determine if a crime has been committed.*

73. Upon arrival at Southway Plaza, Police Officers Pease and Berger proceed directly into the mattress store and confront the Plaintiff.

74. Pease asked the Plaintiff if he was involved in a fight that morning to which the Plaintiff responded "no".

75. Plaintiff told Officers Pease and Berger he was involved in an argument earlier when he told someone to "slow the fuck down" when speeding through the parking lot.

76. Officer Pease says to the Plaintiff: "Gary says you pulled on knife on him."

77. Plaintiff told the Officers that he had been in his store since arriving that morning around 8, hadn't driven his car in the last few hours, and certainly didn't pull a knife on anybody.

78. Plaintiff gave Officer Pease the keys to his car and said "go ahead and look in the car for a knife" "feel the hood, the tail pipe, you'll see it hasn't been driven, there's dew on the windows."

79. Plaintiff told Officers Pease and Berger look in the store for a knife. Officer Pease took Plaintiff's keys. Neither officer searched the car or store for a knife or ascertained if the car had been driven recently. Pease later used Plaintiff's keys to lock the store after Plaintiff's arrest.

80. Officer Pease told the Plaintiff that if he would admit that he "did it" he would only be charged with a misdemeanor, if not Plaintiff would be charged with a felony.

81. Plaintiff would not make such an admission of guilt and told Pease and Berger *"do what you gotta do"*.

82. Officer Berger "patted down" the Plaintiff, did not find a knife on his person, was handcuffed and placed under arrest. [11]

---

[11] Police Officer Doug Narramore testified without contradiction during his pre-trial deposition, when he first arrived at the mattress store, he observed Officers Pease and Berger exiting the mattress store with the Plaintiff handcuffed and under arrest.

11

83. Plaintiff was not given his Miranda warning by either Officers Pease or Berger.

84. Plaintiff was then physically removed from his store by Officers Pease and Berger onto the sidewalk for a 'show up'.

85. While on the sidewalk in front of his store, Gary and Judy McCreery are in their in their SUV approximately 250 feet away; Officer Pease states: "is this the guy?" Officer Narramore, who is standing alongside the SUV, is heard by the Plaintiff say: 'yes'.

86. Plaintiff is taken to jail by Officer Robbins.

87. At the time Officers Pease and Berger enter the mattress store; neither Officer had yet spoken with either complaining victim Gary or Judy McCreery to obtain information about the events which transpired.

88. At the time Officers Pease and Berger enter the mattress store, the extent of their information regarding this incident came solely from the 911 operator. Said information, at best, may constitute a 'reasonable suspicion' that a crime may have been committed, not probable cause to arrest the Plaintiff without a warrant.

89. Officers Pease and Berger, after arriving at Southway Plaza did not conduct a preliminary investigation to secure any evidence, secure the automobile as a potential crime scene,[12] or obtain statements from the suspect, victims and/or witnesses prior and to consider the totality of the circumstances prior to making a determination to arrest without probable cause.

90. Officers Pease and Berger in this case choose to ignored a possible crime scene, the Mini Cooper – so to either rule out or confirm the "fact" as to whether this had recently been driven during an act of 'road rage'.

---

[12] Officer Pease in his pre-trial deposition testified if the Mini Cooper was used in the commission of a crime, it was a possible crime scene.

12

91.     Officers Pease and Berger did not impound the vehicle, or seek Plaintiff's consent to search the vehicle or the mattress store for that matter for a knife.[13] Accordingly, Police Officers Pease and Berger should have, at a minimum, had a reasonable suspicion the vehicle may have contain evidence of a crime.

92.     At the time of Plaintiff's arrest, Officers Pease and Berger had no objective fact(s) establishing whether Plaintiff's Mini Cooper had been operated during the commission of a crime in the prior few minutes.

93.     At the time of Plaintiff's arrest, Officers Pease and Berger did not possess any objective fact(s) establishing whether the Plaintiff had driven said Mini Cooper during the commission of a crime.

94.     At the time of Plaintiff's arrest, Officers Pease and Berger did not possess any objective fact(s) establishing the Plaintiff having communicated a "threat" to Gary McCreery.

95.     At the time of Plaintiff's arrest, Officers Pease and Berger did not possess any objective fact(s) establishing what specific threat(s) were made to Gary McCreery.

96.     At the time of Plaintiff's arrest, Officers Pease and Berger had no objective fact(s) as to what act(s) Plaintiff wanted McCreery to engage in against his will.

97.     At the time of Plaintiff's arrest, Officers Pease and Berger had no objective fact(s) as to *how this 'weapon' was used in the commission of this crime.*

98.     At the time of Plaintiff's arrest, Officers Pease and Berger had no description of the weapon that used in the commission of this crime.

99.     At the time of Plaintiff's arrest, Officers Pease and Berger failed to consider the 'totality of the circumstances' when deciding if Plaintiff committed a crime.

---

[13] Plaintiff did offer voluntary consent to search both the store and the Mini Cooper, however, at this time police officers had no description of what knife they were looking for.

100. At the time of Plaintiff's arrest, Officers Pease and Berger lacked probable cause to arrest the Plaintiff, without a warrant, for the crime of Intimidation with a Deadly Weapon.

101. *After Plaintiff's arrest*, Officers Pease, Berger and Narramore then conduct identification or "show up"; and, for the *first* time, in the presence of police officers, does Gary and Judy McCreery identify the Plaintiff as the alleged assailant.

102. Prior to the 'show up', the McCreery's never gave Officers Pease, Berger, or Narramore a statement about the alleged threats and actions by the Plaintiff.

103. After the Plaintiff was taken to jail, and only then did Officer Narramore take statements from Gary and Judy McCreery.

104. Police did not take a written statement from the Plaintiff. Plaintiff was never afforded an opportunity to give his side of the story.

105. In taking the forgoing actions, the Defendant-Officers, and each of them, were acting, or purporting to act, in performance of their official duties and maliciously and without warrant, probable cause, or any other legal authority whatsoever, intentionally and willfully exercised seizure and arrest of the Plaintiff, detain and confine the Plaintiff.

106. Plaintiff, in connection with the aforementioned seizure and arrest had not committed any crime or public offense, and Defendant-Officers Pease and Berger knew, at all times mentioned in this Complaint, that the Plaintiff had not committed any crime or public offense.

107. Plaintiff did not consent to the aforementioned, seizure, arrest, detention and/or confinement.

108. In an attempt to justify the unreasonable arrest, seizure, detention and confinement of the Plaintiff, the Defendant-Officers, and each of them, falsified their reports in a

14

manner which misrepresents the facts and circumstances leading to the aforementioned arrest, seizure, detention and confinement and in manner which misrepresents the facts and circumstances surrounding the arrest, seizure and confinement of the Plaintiff.

109. On or about October 29 and 30, 2013, Plaintiff was tried for the crime of Intimidation with a Deadly Weapon in the Delaware Circuit Court No. 5. The trial resulted in a mistrial due to a hung jury.

110. On or about November 14, 2013, Plaintiff, by counsel, filed a notice of tort claim with the City of Muncie.

FIRST CLAIM FOR RELIEF

(Depravation of Constitutional Rights)

AGAINST ALL DEFENDANTS

111. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

112. When Defendant-Officers Pease and Berger, and each of them, battered, arrested, seized, detained and confined the Plaintiff, they deprived the Plaintiff of his liberty in violation of his rights to due process of law under the due process clause of the Fourteenth Amendments of the United States Constitution, and the Indiana Constitution.

113. Said Defendant-Officers Pease and Berger, by the aforementioned actions, further subjected the Plaintiff, to an unreasonable seizure, arrest, detention and confinement in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Indiana Constitution and have violated Plaintiff's right to equal protection and freedom from false arrest under the Fourth and Fourteenth Amendments to the United States Constitution, and the Indiana Constitution.

114. As a direct and proximate cause of Defendants, and each of their actions, as described above, Plaintiff, suffered economic and non-economic damages. Plaintiff, as a direct result of Defendant-Officers Pease and Berger's actions suffered extreme embarrassment, humiliation, anxiety, ridicule, physical upset and emotional distress, all according to proof.

115. Plaintiff is informed and believes and thereon alleges that he was subjected to the aforementioned violations of his Constitutional rights as a result of customs, practice, and polices of Defendant City of Muncie. Said customs, policies and practices of Defendant City of Muncie, consist of a failure to adequately train or supervise employees, including the Defendant-Officers Pease and Berger, and each of them, concerning the legality of arrest and seizure activities.

116. Said Defendant, therefore, expressly or impliedly authorized or ratified the aforementioned unlawful acts of the Defendant – Officers Pease and Berger, and each of them, involving the battery, unlawful arrest, seizure, detention and confinement of the Plaintiff.

117. Plaintiff is informed and believes and thereon alleges that the customs, practices and policies of Defendant City of Muncie, as described in this Complaint amount to a deliberate interference with the rights of the Plaintiff.

118. The acts and omissions of the Defendants, and each of them, as described in this complaint, were done intentionally, maliciously and oppressively in willful and conscious disregard for Plaintiff's rights and safety with the intention of harming the Plaintiff. As a result an award of exemplary or punitive damages is warranted.

SECOND CLAIM FOR RELIEF

(False Arrest and Imprisonment)

AGAINST ALL DEFENDANTS

119. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

120. Plaintiff is informed and believes and thereon alleges that on or about December 8, 2012, Defendant-Officers, acting in the course and scope of their employment with the City of Muncie, unlawfully arrested and imprisoned the Plaintiff, and each of them, for a crime that was never committed, without a warrant, forcibly and against his will of the Plaintiff, and confined the Plaintiff in the Delaware County jail, State of Indiana.

121. As a proximate result of the actions of Defendants, and each of them, Plaintiff was unlawfully deprived of his liberty.

122. By reason of the foregoing, Plaintiff sustained actual injury, loss or harm and suffered humiliation, mental anguish, emotional distress and has been injured in mind, body and reputation, all to the damage of Plaintiff, in an amount according to proof.

123. Defendants, and each of their actions, were undertaken with malice and oppression and justify an award of punitive and exemplary damages.

### THIRD CLAIM FOR RELIEF

(Conspiracy)

AGAINST ALL DEFENDANTS

124. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

125. Beginning on or about December 8, 2012, Defendant-Officers, and each of them, knowingly and willfully agreed and conspired among themselves to falsely arrest and imprison the Plaintiff.

126. In furtherance of this conspiracy said Defendants did in fact falsely arrest, and imprison the Plaintiff, and in doing so lent aid and encouragement to each other to permit and continue said false arrest and imprisonment of the Plaintiff.

127. The aforementioned acts and omissions by Defendant-Officers Pease and Berger were undertaken by said Defendants by actual fraud, corruption and malice with the conscious intent to deprive, deceive, vex, annoy and harm the Plaintiff and to deny him his legal and civil rights.

128. Further, on or after December 8, 2012, Defendant-Officers engaged in a conspiracy to cover up, conceal and misrepresent the true facts concerning the facts and circumstances leading to their false arrest and imprisonment of the Plaintiff.

129. As a proximate result of the aforementioned conspiracy, Plaintiff has suffered actual harm, injury and damages, all according to proof.

## FOURTH CLAIM FOR RELIEEF

(Negligent Hiring, Training and Retention)

AGAINST THE CITY OF MUNCIE

130. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

131. Plaintiff is informed and believes and thereon alleges that on or about December 8, 2012, Defendant, City of Muncie, failed to properly train, hire, or supervise the Defendant-Officers Pease and Berger, and each of them, regarding arrest of suspects. The City of Muncie failed to exercise reasonable care or caution and allowed the Defendant-Officers to effectuate a false arrest and imprisonment of the Plaintiff.

132. The City of Muncie knowingly, intentionally and/or negligently hired and failed to supervise, train or discipline or address and prevent such conduct by the Defendant-Officers and thereby authorized and approved the arrest and imprisonment of the Plaintiff.

133. Plaintiff is informed and believes and thereon alleges that Defendant, City of Muncie, negligently adopted and implemented policies and procedures which are outdated, which ignore and encourage the hiring, employment of individuals who intentionally, maliciously and oppressively in willful and conscious disregard for Plaintiff's civil rights.

134. Plaintiff is informed and believes and thereon that Defendant, City of Muncie, was deliberately indifferent and failed to address by discipline, discharge, or otherwise, the false arrest and imprisonment and related behavior known to it.

135. As a proximate result of the intentional, knowingly negligent acts and omissions of Defendant, City of Muncie, Plaintiff has suffered severe injuries, mental anguish and distress and damages including, but not limited to economic and non-economic damages.

## FIFTH CLAIM FOR RELIEF

(Indiana State Law Claims for False Arrest, False Imprisonment, Battery, Malicious Prosecution, and Intentional Infliction of Emotional Distress)

### AGIANST ALL DEFENDANTS

136. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

137. Defendant's conduct also constitutes violations of Indiana law, to wit: false arrest, false imprisonment, malicious prosecution, battery and intentional infliction of emotional distress.

138. Defendant City and Muncie and City of Muncie Chief of Police are liable for the actions of Defendant-Officers Pease and Berger.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, pray for judgment against Defendants, and each of them, as follows:

1. For general damages according to proof;

2. For special damages according to proof;

3. For punitive and exemplary damages in or that according to proof;

4. For cost of suit incurred herein, including reasonable attorney fees;

5. For such other and further relief the court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues that are triable by jury.

Respectfully submitted,

*/s/ John R. Panico*

John Robert Panico 24039-48
PANICO LAW LLC
Attorney for Plaintiff
9465 Counselors Row, Suite 200
Indianapolis, IN 46240
(317) 759-7464
jpanico@discriminationlawgroup.com